[Civ. No. 17235. Second Dist., Div. Two. May 5, 1952.]

Estate of MARIE W. PETERS, Deceased. ANNA FRED-
ERICKA FUENNING et al., Appellants; SECURITY-
FIRST NATIONAL BANK, Executor and Respondent,
v. TOM C. CLARK, Attorney General of United States,
as Successor to Alien Property Custodian, Contestant
and Respondent.

Joseph R. Vaughan and Pat B. Trapp for Appellants.

Harold I. Baynton, Assistant Attorney General of United
States, Director, Office of Alien Property; Walter S. Binns,
United States Attorney, Clyde C. Downing, Assistant United
States Attorney, Valentine C. Hammack, Special Assistant to
the Attorney General, James D. Hill, George B. Searls, and
John F. Cushman, Attorneys, Department of Justice, for
Respondents.

McCOMB, J.—Petitioners appeal from a probate decree
determining heirship and that decedent's estate escheated to
the United States.

*Facts:* Marie W. Peters died on or about May 15, 1944.
She left a will under the terms of which one third of her

estate was bequeathed to two legatees who were residents of Germany; the remaining two thirds of the estate was bequeathed to unnamed issue of persons named in the will, also residents of Germany.

The estate consisted entirely of personal property with the exception of one piece of real property which decedent, just prior to her death, had contracted to sell. The sale was consummated by the executor of the estate.

On September 4, 1946, the Alien Property Custodian issued an order vesting in himself for the benefit of the United States all the interest in the estate of all the legatees named or described in the will. The order determined that the property was payable or deliverable to or claimed by nationals of an enemy country and stated that as to such nationals who were not within an enemy country the interest of the United States required that they be treated as nationals of a designated enemy country.

Pursuant to an executive order of October 14, 1946, the Attorney General of the United States succeeded to the rights and duties of the Alien Property Custodian.

A petition for determination of heirship was filed on September 10, 1946, by Anna F. Fuenning, the sister of decedent, a resident of the United States. She alleged that she was the only heir qualified to take distribution from decedent's estate by reason of the fact that if the legatees named in the will are still living they are aliens residing in Germany and are precluded from testamentary disposition under section 259 of the Probate Code of California, because under the laws of Germany on May 15, 1944, a United States citizen was not given a reciprocal right of inheritance.

The Attorney General of the United States, hereinafter referred to as "objector," filed an answer to the petition. There is also a petition for determination of heirship filed on June 26, 1947, by Hermann T. Peters, a United States resident, the nephew of John F. Peters and the son of one of the legatees in the will. Both petitioners by agreement in writing filed in the proceedings resolved their differences and the petitioners and the objector entered into a stipulation that the court need not in this proceeding determine the difference of interest in the estate, if any, between the two petitioners.

The trial court, after hearing, found "that on May 15, 1944, the date of death of the decedent, citizens of the United States had the right to take personal property and the proceeds thereof on the same terms and conditions as residents

and citizens of Germany"; and that on that date "except for the existence of a state of war, citizens of the United States had under the laws of Germany the right to receive by payment to them within the United States or its territories money originating from the estates of persons dying within Germany provided that such United States citizens could obtain a license under the provisions of the German Foreign Funds Control Laws."

From the foregoing findings the trial court concluded that under the laws of Germany on May 15, 1944, there existed a reciprocal right upon the part of citizens of the United States to take personal property upon the same terms and conditions as residents and citizens of Germany, and to receive by payment to them within the United States money originating from the estates of persons dying within Germany. The court then concluded that petitioner Hermann T. Peters would be entitled to distribution of his proportionate share of the residue of the estate except for the vesting order, and that objector, pursuant to such order, was entitled to all the residue of defendant's estate. During the course of the trial the court on motion of objector struck from the record evidence relative to the German law of succession.

■ *Question: Did the trial court err in granting objector's motion to strike evidence of German law relative to (a) restricting the rights of succession and inheritance because of antisocial conduct, dated November 5, 1937, and (b) the Jewish escheat statute, viz., the 13th decree for the execution of the Reich Citizenship Law of July 1, 1943?*

*Yes.* The main issue before the court was whether a citizen of the United States had a reciprocal right to inherit from German decedents upon the same terms and conditions as residents and citizens of Germany had a right to receive by payment within the United States money originating from German estates within the terms of section 259 of the Probate Code.

The pertinent sections of the Probate Code here involved are:

"Sec. 259. Right of aliens to inherit: [Dependence on reciprocal rights]. The rights of aliens not residing within the United States or its territories to take either real or personal property or the proceeds thereof in this state by succession or testamentary disposition, upon the same terms and conditions as residents and citizens of the United States is dependent in each case upon the existence of a reciprocal

right upon the part of citizens of the United States to take real and personal property and the proceeds thereof upon the same terms and conditions as residents and citizens of the respective countries of which such aliens are inhabitants and citizens and upon the rights of citizens of the United States to receive by payment to them within the United States or its territories money originating from the estates of persons dying within such foreign countries.

"Sec. 259.1. Burden of proof [as to reciprocal rights]. The burden shall be upon such nonresident aliens to establish the fact of existence of the reciprocal rights set forth in Section 259."

(a) The law restricting the rights of succession and inheritance because of antisocial conduct provided that a person who had been deprived of his nationality (by behavior contrary to his duty of loyalty to the Reich or by reason of his failure to return to Germany from abroad to register and serve in the German Army) could not take by succession or inheritance from a German national nor could the spouse and children of such persons to whom the loss of nationality extended inherit from a German. This law might very well deprive a United States citizen of inheritance from a German if such a denationalized German became a naturalized American citizen, for he would not be able to take on the same terms and conditions as a German citizen but would be barred from taking under this law of succession.

It is apparent that this particular statute was material to the issue before the court and that it erred prejudicially in granting objector's motion to strike it from the evidence.

(b) The evidence with respect to the Jewish escheat statute was likewise material.

Under such law upon the death of a Jew his estate did escheat to the Reich, but the Reich might grant a settlement to nonJewish heirs and persons entitled to support having their residence within Germany.

Objector's contention that the law could have no application to American citizens as it provided for the estate of a German Jewish decedent is erroneous. If a Jewish person, a resident of Germany, died, his American heir would take nothing because the Jewish person's property would escheat to the Reich. The decree of September 1, 1944, providing that the 13th decree was not applicable to foreign Jews did not alter the situation with respect to the admissibility of evidence as to the 13th decree because it was not issued until

September 1, 1944, which was subsequent to the date of death of decedent. Thus the 13th decree was in effect without amendment at the time of her demise. In addition the decree of September 1, 1944, purports to eliminate the escheat provision insofar as a nonresident Jew leaving property in Germany is concerned, but the statute would still apply to the estate of a resident German Jew so as to defeat the rights of his American heirs.

The evidence excluded was material and relevant to the determination of the issue before the court. It was prejudicially erroneous for the trial judge to strike it out. (*Mashbir* v. *Mashbir*, 29 Cal.App.2d 733, 736 et seq. [85 P.2d 482]; *Bole* v. *Bole*, 76 Cal.App.2d 344, 345 [1] [172 P.2d 936].)

In view of our conclusions it is unnecessary to consider other points argued by counsel.

Reversed.

Moore, P. J., and Fox, J., concurred.